IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CR-340-FL

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| JAMES NORRIS WRIGHT, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on defendant's motion to suppress (DE # 21). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge William A. Webb entered memorandum and recommendation ("M&R") wherein he recommends that the court grant defendant's motion to suppress. The government timely filed objection to the M&R, and defendant responded. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge and grants defendant's motion to suppress.

## BACKGROUND

Defendant was indicted on October 7, 2010, on charges of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924, and possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j). On November 30, 3011, defendant filed the instant motion to suppress. The suppression motion seeks to suppress all evidence resulting from the traffic stop and frisk that occurred on June 8, 2010, as well as all statements attributed to him as a direct result of the search and seizure.

The magistrate judge conducted an evidentiary hearing on January 10, 2012. At hearing, the government presented the testimony of two officers with the Fayetteville Police Department involved in the events in question, Officer Charles Cochran and Officer Brian Wollard. Defendant offered the testimony of Shawn Collins.[1] The parties filed supplemental memoranda after the hearing which the magistrate judge considered in his determinations as outlined in the M&R.

## STATEMENT OF THE FACTS

The magistrate judge engaged in lengthy description of the facts, particularly the testimony of officers Cochran and Wollard. (See M&R 2-5.) The government has lodged specific factual objections to the facts as laid out in the M&R, with specific citations to the hearing transcript. The government seeks to supplement the facts as laid out in the M&R, or, in the alternative, asks the court to receive further evidence.

With benefit of the transcript of the evidentiary hearing, the court has closely reviewed each of the government's factual objections. Finding each of the government's factual objections to be supported by the testimony in the record, the factual objections are sustained, and objections 1 through 16 as outlined in the government's filing are hereby supplemented to the magistrate judge's recitation of the facts in the M&R, which recitation is also incorporated by reference and adopted in addition to the government's supplements herein noted.[2] As described in detail below, however,

---

[1] Mr. Collins is also a detective with the City of Fayetteville Police Department. (Tr. 75:12-13.)

[2] Having supplemented the facts as requested by the government, the court finds it unnecessary to reopen the record for the introduction of additional evidence. Additionally, the court notes that while it supplements the record with the facts as noted in the government's objections, the facts described in objection 10 were referenced in the M&R. (See M&R 3). The court also makes note of the minor factual discrepancy in the M&R noted by the government at objection 9; while the M&R noted that Officer Cochran drove past the vehicle in question, the government points to Cochran's statement that he was "more or less idling." (Tr. 18:8-9.) Review of the record reveals that Cochran mentioned that "I kept going. I can't recall how far I did get, but I continued to travel in that direction, slowly," after being asked if he actually went down the street or stopped. (Tr. 19:10-13.) Thus, the M&R and the government's objection 9 reveal a
(continued...)

2

the supplements to the factual findings in the M&R do not affect the court's adoption of the M&R and its conclusion with regard to defendant's motion to suppress.

## DISCUSSION

A.  Standard of Review

The district court reviews *de novo* those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. Amend. IV. In Terry v. Ohio, the Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a "brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is underfoot." Illinois v. Wardlaw, 528 U.S. 119, 123 (2000) (citing Terry, 392 U.S. at 30). Whether reasonable suspicion exists to justify the stop depends on the "totality of the circumstances, including information known to the officers and any reasonable inferences to be drawn at the time of the stop." United States v.

---

[2](...continued)
slight factual discrepancy in Cochran's testimony that, upon review, does not alter the decisions reached herein.

Williams, No. 11-4414, 2011 WL 4866760 at *1 (4th Cir. 2011) (unpublished); United States v. Washington, 2011 WL 6226266 *1 (4th Cir. 2011) (citing United States v. Sokolow, 490 U.S. 1, 8 (1989)). Reasonable suspicion is an objective test. The court considers the facts as they were known to the officer, not the officer's subjective beliefs. United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004). Reasonable suspicion must exist at the time of the stop, not after the fact. United States v. Ienco, 182 F.3d 517, 524 (7th Cir. 1999).

As noted by the magistrate judge, the Supreme Court has held that in a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation." Arizona v. Johnson, 555 U.S. 323, 327 (2009). The police do not need to have cause to believe any occupant of the vehicle is involved in criminal activity. Id. "To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." Id. In the context of traffic stops, police diligence involves requesting a driver's license and vehicle registration, running a computer check, and issuing a ticket. United States v. Digiovanni, 650 F.3d 498, 507 (4th Cir. 2011). If a police officer seeks to prolong a traffic stop to allow for investigation into a matter outside of the scope of the initial stop, he must have reasonable suspicion or the driver's consent. Id.

Reasonable suspicion is a "particularized and objective basis for suspecting that the person to be frisked is armed and dangerous." United States v. Powell, 666 F.3d 180, 185-186 (4th Cir. 2011) (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the

4

circumstances would be warranted in the belief that his safety or that of others was in danger." Id. (quoting Terry, 392 U.S. at 27). The determination of reasonable suspicion must be based on "commonsense judgments and inferences about human behavior," and it is measured by the totality of the circumstances. Id. (citing Wardlow, 528 U.S. at 125 and United States v. Arvizu, 534 U.S. 266, 273 (2002)).

The law is well settled in the Fourth Circuit that in order to conduct a lawful protective search of a stopped vehicle, "an officer must possess a reasonable belief of both (1) the suspect's dangerousness and (2) the possibility that the suspect might gain immediate control of any weapons inside the vehicle." United States v. Griffin, 589 F.3d 148, 153 (4th Cir.2009) (citing United States v. Holmes, 376 F.3d 270, 276 (4th Cir. 2004)). Additionally, as noted by the magistrate judge, the Fourth Circuit has recently expressed concern in the context of Terry stops regarding the inclination of the government to use whatever facts are present, regardless of how innocent they are, as indicia of suspicious activity. See United States v. Foster, 634 F.3d 243, 248 (4th Cir. 2011) ("[T]he Government cannot rely upon post hoc rationalizations to validate those seizures that happen to turn up contraband.").

The government first raises an argument regarding the law to be applied to the facts of this case, suggesting that much of the case law quoted above is irrelevant because it deals with whether officers had reasonable suspicion to initiate Terry stops instead of whether after a lawful stop, an officer had reasonable suspicion to initiate a Terry frisk, as was the case here. However, as noted by the Fourth Circuit in Powell, "reasonable suspicion" is the standard for both Terry stops *and* frisks, and while the determination of the lawfulness of a Terry stop is different from that of a Terry frisk, "the general reasonable suspicion standard is the same in both instances." Powell, 666 F.3d

180, 186 n.5. Additionally, while the government suggests that a different analysis is required for a Terry frisk after a traffic stop based on concern for officer safety, Powell would belie that conclusion as well. Id. n.6 (noting that all roadside traffic encounters are potentially dangerous for law enforcement, but that Terry does not permit frisks for weapons on less than a reasonable belief or suspicion directed at the person to be frisked).[3] Lastly, while the determinations for Terry stops and frisks are different, case law interpreting the requirements of reasonable suspicion in the context of Terry stops has cited authority interpreting the same in the context of Terry frisks, see Powell, 666 F.3d at 186, and thus simply citing a case like Foster which dealt with reasonable suspicion in the context of Terry stops, does not make the principles set forth in that case irrelevant.

B.  Analysis

The government does not object to the issue to be determined here, which, as framed by the magistrate judge, is whether after the valid, initial traffic stop, Officer Cochran had a reasonable suspicion that the occupants of the car were dangerous, making his protective search of the center console proper under the Fourth Amendment. The government's legal objections include a recasting of several facts, almost all considered by the magistrate judge in some capacity, and the argument that these facts establish reasonable suspicion, contrary to the magistrate judge's conclusion. The court considers each in turn.

---

[3] The government cites to Florida v. J.L., 529 U.S. 266 (2000) to suggest that concern for officer safety alters the analysis of Terry frisks and the requirement of reasonable suspicion. The court finds the J.L. decision does not create a separate standard for Terry frisks, but in fact expressly declines to do so in the context of frisks and firearms. J.L., 529 U.S. at 273. The concern for officer safety language in J.L. is dicta that does not create a new rule for Terry frisks. In fact, the court in J.L. noted that the decision did not diminish "a police officer's prerogative, *in accord with Terry*, to conduct a protective search of a person who has already been legitimately stopped." Id. at 274 (emphasis added). Since Terry is interpreted to require reasonable suspicion, J.L. does not appear to alter that requirement.

6

1. Officer Cochran's Law Enforcement Experience

The government argues that the magistrate judge did not give sufficient weight to Officer Cochran's law enforcement experience when analyzing whether reasonable suspicion existed at the time of the search. A determination of reasonable suspicion must give "due weight to our common sense judgments reached by officers in light of their experience and training." United States v. Perkins, 363 F.3d 317, 321 (4th Cir. 2004) (citations omitted); Griffin, 589 F.3d at 152; United States v. McCoy, 513 F.3d 405, 415 (4th Cir. 2008). However, an officer's experience is but one of several factors to be considered. Griffin, 589 F.3d at 152. In Griffin, the officer's experience led to his suspicion that drug trafficking activity was going on in a certain area, but unlike in this case, the officer's experience was buttressed by the testimony of an informant who pointed out the defendant to the officer. Id. at 153.

Even in cases where the officer's experience was a significant factor in establishing reasonable suspicion, the Fourth Circuit has noted that "a wealth of experience will [not] overcome a complete absence of articulable facts . . . which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." McCoy, 513 F.3d at 415. The facts that are needed in this case are facts that, taken together with Officer Cochran's experience, would lead to a reasonable suspicion that the driver, Victor Jones ("Jones"), or another occupant of the vehicle was "dangerous" and the possibility that Jones or an occupant would gain control of weapons in the vehicle. Griffin, 589 F.3d at 153.

The government argues that Officer Cochran's training, which is certainly extensive as it relates to drug investigations, in conjunction with the general likelihood that drugs and guns are

7

likely to be found together, is a factor that supports reasonable suspicion in this case. While the court acknowledges Officer Cochran's training, as did the magistrate judge, (M&R 2), upon close review of the record, the court is unconvinced that it was objectively reasonable to believe that there was a firearm in the car that justified a Terry frisk of Jones and a search of the center console. At hearing, counsel for the government asked Officer Cochran, "Is it safe to say, based on your training and experience, that firearms and drugs typically go together?" (Tr. 13:16-19.) Officer Cochran answered affirmatively. (Id.) Aside from the fact that the form of this leading question suggests what the answer should be, the evidence of record suggests that Officer Cochran believed there was a drug transaction occurring (Tr. 43:10-12, 54:6-25-55:1-21), and little else existed to support an inference that the occupants of the car were dangerous and could access weapons after the traffic stop occurred. Without more than an affirmative answer at the suppression hearing to connect Officer Cochran's experience in drug investigations with the conclusion that the car's occupants were dangerous because of accessibility to weapons, the court overrules the objection.

2. High Crime Area

The government argues that the magistrate judge incorrectly concluded the government failed to support the defendant's presence in a high crime area with other particularized factors sufficient to establish reasonable suspicion. There is no dispute that the Fourth Circuit has held that the "high crime nature of the area" is a relevant factor in a Terry analysis. United States v. Glover, 662 F.3d 694, 698 (4th Cir. 2011). Likewise, there is also no dispute that the stop and frisk in this case occurred in a high crime area, a fact the magistrate judge noted. (M&R 2.) The government essentially argues that defendant's mere presence in the high crime area of Massey Hill, and his presence in front of 1919 Powell Street, a residence where Officer Cochran had previously executed

8

a search warrant for another individual not related to these events or the investigation, provided the officer with a particularized factor to support reasonable suspicion.

This argument is unavailing. Notably, the government cites no authority for its assertion that defendant's presence in a high crime area is itself a particularized factor because such a conclusion is inconsistent with the relevant case law. See Wardlow, 528 U.S. at 124; Glover, 662 F.3d at 699; see also United States v. Neely, 564 F.3d 346, 352 (4th Cir. 2009) (defendant's presence in a high crime area at 3:00 am, fumbling in a dark car, and lying about reasons for being out not enough to establish reasonable suspicion). Without more, the objection is overruled.

3. Lawncare Equipment

This objection asserts that Officer Cochran's observation of lawncare equipment in the back of the Impala and the Maryland tags on the car were factors supporting a reasonable suspicion that the occupants of the car were dangerous, and the magistrate judge did not give these factors sufficient weight. The objection offers no new argument, but rather asks the court to come to a different conclusion than the magistrate judge based on the same facts. The court declines to do so.

As the magistrate judge noted, if Officer Cochran had "seen any number of things" in the Impala's trunk, it would have piqued his interest. Tr. (51:25-52:1-2.) Likewise, Officer Cochran's response to the magistrate judge's question regarding the out-of-state tags, that "to a degree" any out of state tag in North Carolina would be out of place, is not compelling as to how these two factors, the lawncare equipment and the out of state tags, added much, if anything, to a finding of reasonable suspicion. The court agrees with the magistrate judge that without more, these factors appear to be

9

fairly innocent facts painted as suspicious activity in hindsight. See Foster, 634 F.3d at 248. The objection is overruled.

   4.   Suspicion of Drug Sale

The government argues that the magistrate judge erroneously failed to consider in the M&R Officer Cochran's observation of possible illegal drug activity. Upon review, the court finds that the magistrate judge did in fact address Officer Cochran's belief that he thought a hand-to-hand drug sale was occurring. (See M&R 4, 9-10). In fact, the magistrate judge specifically pointed out that "Officer Cochran's suspicion of drug activity was the lens through which he viewed Defendant's activity and it colored his perception of events." (Id. at 10.) The connection between Officer Cochran's belief that a drug sale was occurring and the requirement of indicia of dangerousness in the occupants of the car has already been explored in this order. Furthermore, the government acknowledges that Officer Cochran did not see any drugs or related items change hands, and the record affirms this. (Tr. 54:19-20.) Even taken with the other factors the government contends support reasonable suspicion, Officer Cochran's belief that illegal drug activity was occurring is not enough to create reasonable suspicion, and the objection is overruled.

   5.   Evasive Actions

The government contends that the actions of defendant and the other occupants of the Impala were evasive, and that this is a factor supporting reasonable suspicion. Specifically, the government argues that when the Impala that Officers Wollard and Cochran was watching began to back down the street for what seemed like an unreasonably long time "in the opposite direction of [Detective Wollard's] car," that behavior constituted evasive action that would be a pertinent factor in

10

determining reasonable suspicion. Wardlow, 528 U.S. at 124.

However, the government's inference of evasive activity does not line up with the facts of record. While the backing up is arguably strange driving behavior, no facts exist to suggest that it was actually evasive. The government suggests implicitly that because the Impala backed away from Officer Wollard, its occupants were evading law enforcement. Yet, this inference is belied by the fact that while the Impala was backing away from Officer Wollard, it was backing *towards* Officer Cochran. (Tr. 23:18) (Officer Cochran's statement "[The Impala] continued back toward me."). Officer Cochran testified that both officers were driving unmarked vehicles that night (Tr. 14:15-21, 16:22-25), and Officer Cochran was in uniform. The backing of the Impala away from one unmarked car with a detective inside towards another unmarked car with a uniformed police officer inside cannot, without more, be considered evasive behavior to support reasonable suspicion. The objection is overruled.

6. Driver Movement

The government objects to the magistrate judge's analysis of the driver Jones' movement toward the center console and "reluctance" to place his hands on the steering wheel when Officer Cochran ordered him to do so, arguing that the magistrate judge did not consider these factors in totality with the other factors supporting reasonable suspicion.

The government again argues that the magistrate judge's citation of Sprinkle to find that Jones' reaching toward the center console established little in the way of reasonable suspicion is erroneous because that case dealt with a Terry stop instead of a frisk. See United States v. Sprinkle, 106 F.3d 613, 617 (4th Cir. 1997). The court has previously dismissed the argument that case law

11

interpreting the analysis of reasonable suspicion for Terry stops is inapplicable to case law interpreting reasonable suspicion for Terry frisks since the standard is the same. Additionally, while Sprinkle did involve a case where the officer had more of a view than it appears Officer Cochran had here, some of the principles in the Sprinkle decision are still applicable. The Fourth Circuit noted in Sprinkle that the officer saw no drugs, no money, and no paraphernalia. Id. at 617. Similarly, in this case, Officer Cochran saw nothing of the sort. (Tr. 54:18-20.) Other Fourth Circuit law also suggests that the awkward positioning of Jones is not enough to support a reasonable suspicion, especially considering the paucity of other factors to support that finding, as discussed thoroughly in the M&R and herein. See Neely, 564 F.3d at 352 ("Fumbling in a dark car in the middle of the night under the watchful eyes of two law enforcement officers for a trunk button does not, without more, create a reasonable suspicion that Neely was *dangerous*.") (emphasis in original).

The government also asks the court to reach a different conclusion with respect to facts considered by the magistrate judge regarding Officer Cochran's request for Jones to put his hands on the wheel, as well as the position of Jones' body, which Officer Cochran found to be unreasonable. (M&R 4-5, 9.) As the government notes, the magistrate judge did not find Jones' delay of three seconds in putting his hands on the steering wheel to be "reluctant or slow." (M&R 9.) The government suggests that the court should not accept the magistrate judge's conclusion, but rather should evaluate the three-second delay "through [sic] the lens of an objective officer, based on his training and experience, and in totality with the other observations" to determine whether Officer Cochran had a reasonable suspicion to frisk Jones. (Govt. Obj. 18.) Considering the facts of an objective officer, the court agrees with the magistrate judge that a mere three seconds is not long enough of a delay to constitute a factor supporting reasonable suspicion. The government cites

no authority suggesting that such a brief delay is significant; nor does the government offer an example of why Officer Cochran's reason and experience would lead him to believe three seconds was an unreasonably long time. Without more, the court declines to deviate from the magistrate judge's conclusions. The objection is overruled.

The government's final arguments restate the relevant case law, cited herein, and argue that considering the totality of the circumstances, the government has shown that Officer Cochran had a reasonable suspicion that 1), Jones and the occupants of the car were dangerous, and 2), that they might gain control of a weapon. See Griffin, 589 F.3d at 153. The court cannot agree. While the court has reviewed the record carefully as well as reviewed each of the government's objections, the court agrees with the magistrate judge that the facts simply do not support the government's arguments.

The government cites Ryburn v. Huff, No. 11-208, 2012 WL 171121 at *5 (U.S. Jan. 23, 2012), a recent per curiam decision from the Supreme Court, to argue that courts should be cautious about second guessing a police officer's assessment of a situation. The court's findings herein are consistent with the concerns expressed in Ryburn regarding a police officer's professional assessment. The court notes, however, that the Ryburn decision does not address Terry frisks pursuant to a lawful traffic stop, and further notes that the officers in Ryburn conducted an investigation, including numerous interviews, before appearing at the suspect's house and entering it without consent. Id. at *1.

Instead, the court relies on the same authority cited by the magistrate judge and not addressed by the government, specifically the Foster decision, and the Fourth Circuit's concern about using

13

whatever facts are present to paint a picture of suspicious activity that is not warranted. 634 F.3d at 248. The court finds that the facts as alleged by the government do not establish reasonable suspicion, and therefore that Officer Cochran's protective search of the center console was unlawful.

## CONCLUSION

Upon *de novo* review of those portions of the magistrate judge's M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the findings and recommendations of the magistrate judge in full and GRANTS defendant's motion to suppress (DE # 21). Evidence obtained during the traffic stop that occurred on June 8, 2010, is to be excluded from use at trial in the government's case in chief.

SO ORDERED, this the 3rd day of March, 2012.

LOUISE W. FLANAGAN
United States District Judge